DOMINGA GOMES *vs.* BOSTON MUTUAL LIFE INSURANCE COMPANY.

JULY 16, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action, brought after the death of Manuel Gomes, to recover on a life insurance policy issued on his life by the defendant for $1000, which was made payable on his death to the plaintiff.

At the conclusion of a trial before a justice of the superior court, without a jury, the plaintiff was permitted, with the assent of the defendant, to amend her declaration in special assumpsit by adding thereto the *indebitatus* assumpsit counts. The justice then rendered a decision for the plaintiff for $25.26, which was the amount of the three quarterly premiums paid to the defendant on the policy. To this decision the plaintiff took an exception and the case is now before us on her bill of exceptions, in which she relies upon that exception and certain exceptions taken by her to rulings on the admission of evidence.

The policy was dated July 18, 1934, and provided for the payment to the defendant of $8.42 on or before the 18th of July, October, January and April in each year, and that

"if any premium shall not be paid when due or within the grace period hereinafter provided for, this policy shall thereupon lapse." It provided, however, for no period of grace for the payment of any premium payable during the first year. It provided that the holder of the policy should be entitled to have it reinstated within three years after default, but only upon the production of evidence of insurability satisfactory to the insurer and the payment of all overdue premiums.

The insured paid the first two premiums on time, but when the third one fell due, on January 18, 1935, it was not paid. The plaintiff, an illiterate Portuguese woman, testified that later in that month, about the 24th she thought, she paid $6.42 on that premium in her home to one of the defendant's collectors, who gave her a receipt and who, she said, collected premiums in her home "right along", her children's lives also being insured. She testified also that in February, she thought on the 18th, she paid the remaining $2.00 to make the total of $8.42, to the defendant's superintendent for the Providence district in this state, at his office in the city of Providence, and that he gave her a receipt for $8.42.

The defendant's superintendent testified in its behalf that on January 28 a payment of $3.00 was made on the policy, by the plaintiff to its collector, and a "reinstatement receipt", filled out and signed in behalf of the defendant, in the defendant's regular form for such a receipt, was given to her; that on February 7 she made another payment, of $2.50, to the superintendent at his office and a similar receipt was given to her; and that on February 20, she paid the balance of $2.92, and a similar receipt was given to her.

A blank receipt in this form was identified by the witness and filed as an exhibit, against the objection of the plaintiff, who took an exception to its admission. This form reads: "Received of . . . Dollars to be applied as premiums on Policy No. . . . for which an application for reinstatement

is this day made to the Boston Mutual Life Insurance Co. of Boston, Mass." Below this and above the line for the agent's signature is the following, in smaller type, but perfectly legible: "No liability is assumed by said Company under above named Policy, nor can the receipt of above named amount be in any way construed as binding, unless said Company accept application for reinstatement and the insured is alive and in good health upon the date of acceptance."

No formal application for reinstatement was ever made and no form for such an application was given to the plaintiff or the insured; nor was either of them told that a formal application for reinstatement was necessary.

The superintendent also testified that, when the last installment of the premium was paid, the policy had lapsed by its terms; that for the first year's premiums, of which the premium in question was one, there was no period of grace, as the policy itself showed; that there should have been an application for reinstatement made, if the company saw fit to require one; and that the payment was received as "perfectly all right, because it was on the 31st day and at that time Mrs. Gomes told me the man was in good health and was out on a boat." He further testified that the sending to the home office of the money for that premium was conditional on her statement that the insured was in good health and at work, his occupation being that of steward on boats. In fact, this payment was made on the 33rd day after the final day for the payment of the premium according to the policy. The condition of the insured's health at this time will be shown *infra*.

The policy contained the provision that no agent or person other than the president or secretary of the company had authority to extend the time for paying any premium under the policy, to waive any of its provisions, or to make any agreement or waiver that would be binding on the company. Outside of his own testimony, there was no evidence to show that this superintendent had authority to

waive any lapse of a policy for default in the payment of a premium within the time limited by the terms of the policy.

In our opinion the most favorable inference in favor of the plaintiff that could reasonably be drawn from the testimony of the superintendent, assuming that such an inference could reasonably be drawn, is that it was the regular practice of the defendant to permit its local superintendents to accept an overdue premium during the first year of such a policy and to waive the lapse of the policy, if the premium was paid in full within thirty-one days after it was payable *and the insured was then in good health.* The plaintiff relies on *Milkman* v. *United Mutual Insurance Co.,* 20 R. I. 10, and cases cited in the opinion in that case, as sustaining a general rule that the acceptance by an insurance company of a premium, after a full knowledge of a violation of a condition of a policy, is a waiver of any forfeiture because of such violation. But those cases were cases of unconditional acceptance of the premium by the company, and the rule is predicated upon that assumption.

The insured died on March 19, 1935 and the policy was in due time filed with the defendant for payment, with proofs of death in due form; but the defendant refused payment because the premium due on or before January 18, 1935, had not been promptly paid and the insured was not in good health when it was finally paid. In fact, one of the proofs of death showed, without being contradicted or qualified in any way, that the physician who signed and certified to it attended the insured on January 8, 1935 and made his last visit to him on January 10, 1935.

The other proof of death, signed by the plaintiff by her mark and not contradicted or qualified by her testimony or any other evidence, showed that the insured first complained of ill health on January 1, 1935; that he quit work on January 30, 1935; that he was sent to Wallum Lake Tubercular Hospital on February 19, which was the day just before the day on which the final installment of the pre-

mium was paid, and remained there twenty-one days; and that he died at his home in East Providence of spinal trouble, after an illness of forty-seven days. The evidence showed clearly that when the default in the payment of the premium occurred, the insured had been sick for seventeen days and under the care of a physician for at least ten days; that he continued to be sick until his death on March 19; and that on February 20, when the last installment of the premium payable on January 18 was paid and the plaintiff told the superintendent that he was in good health and out on a boat, he was in fact in the tubercular hospital.

At the trial of this case the trial justice was the judge of both the law and the facts; and we are of the opinion that on the evidence we cannot find that he was wrong in deciding, as he did, that the installments of that premium were not received by the defendant unconditionally but only *subject to the condition that the insured was in good health.* Nor can we find that he was wrong in deciding also that the insured was not in good health when the money was received.

We may add that the evidence shows clearly that he was not in good health at any time from January 1 to the time of his death, so that at no time after the date of the default was he in such a state of health that he could have satisfied an essential condition for a reinstatement of the policy, or for the acceptance of a late premium as if it were paid on time. That the decision of the trial justice that the plaintiff was not entitled to recover on the policy was in accordance with the evidence in the case and the law applicable thereto seems to us so clear that we see no sufficient reason for citing authorities in support of such decision. The plaintiff certainly has no ground to complain because the trial justice gave her a decision, on the added *indebitatus* assumpsit counts, for the amount of all the premiums paid. The plaintiff's exception to the decision therefore cannot be sustained.

The other four exceptions set forth in her bill of exceptions were to certain rulings of the trial justice as to the ad-

mission of evidence, but all save one of these have not been pressed before us and must therefore be treated as abandoned. That one is to the ruling of the trial justice in permitting the defendant to introduce in evidence a printed form of receipt, with blanks in it to be filled out, which, it had been testified, was the same form as the printed form of receipt that was filled out, signed in behalf of the defendant and delivered to the plaintiff on each of the three occasions when she paid installments of the premium payable on January 18, 1935.

She had testified that after the death of the insured she delivered to a representative of the defendant the policy and these three receipts. This testimony was corroborated to some extent by another witness for her and was not controverted by the defendant. When the blank form was offered in evidence by the defendant, no objection to its admission was made by the plaintiff on the ground that it was not the best evidence and that the original receipts, filled out and signed, should have been produced; nor were the original receipts called for by the plaintiff at the trial. If this evidence was inadmissible, its admission was not prejudicial to the plaintiff. This is so because the uncontradicted testimony of the superintendent, whom the trial justice said he believed, when that testimony is taken in connection with the language of the policy, shows conclusively that the defendant, in receiving the partial payments of the premium, was not accepting them unconditionally, but receiving them subject to the condition of the insured's good health and in reliance upon the plaintiff's statement, which was false and which she must have known to be false, that he was in good health and out on a boat. Therefore, our conclusion is that this exception should not be sustained.

All the plaintiff's exceptions are overruled and the case is remitted to the superior court for entry of judgment on the decision.

*Joseph G. Le Count,* for plaintiff.

*Luigi De Pasquale. Patrick J. Lane, Everett H. Lane,* of Boston, for defendant.